

JSH/TB/USAO#2010R00504

_FILED _____ENTERED
_LODGED _____RECEIVED

FEB - 3 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND   DEPUTY
BY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | CRIMINAL NO. MJG-11-058 |
| v. | * | |
| | * | (Obstruction of an Agency Proceeding, |
| **CARDIFF MARINE INC.** | * | 18 U.S.C. § 1505; Act to Prevent |
| | * | Pollution from Ships, 33 U.S.C. § |
| **Defendant.** | * | 1908(a)) |
| | * | |
| | * | |
| | * | |
| | * | |

*******

## INFORMATION

### COUNT ONE

**(18 U.S.C. § 1505 – Obstruction of an Agency Proceeding)**

The United States Attorney for the District of Maryland and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice hereby charge:

At all times relevant:

#### Introduction

1. Defendant Cardiff Marine Inc. ("Cardiff" or "Defendant") was a Liberian corporation with a ship management office in Greece. Cardiff was the operator and technical manager of the *M/V Capitola*, a 40,437 gross ton vessel. The *Capitola* carried a range of dry bulk cargo to and from ports throughout the world. When in operation, machinery on board the *Capitola* generated waste oil, sludge, and oily bilge water.

2.      The United States is party to the International Convention for the Prevention of Pollution from Ships, known as the MARPOL Protocol or "MARPOL." The objective of MARPOL is to preserve the marine environment through the complete elimination of intentional pollution by oil and other harmful substances and the minimization of accidental discharge of such substances. One hundred and sixty-nine (169) nations are parties to MARPOL. It is embodied in agreements that the United States has ratified and it has been implemented in the United States by the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901, *et seq*.

3.      Annex I of MARPOL established international standards governing the treatment and disposal of oil residues and oily mixtures generated in the engine rooms and machinery spaces of oceangoing vessels. Under MARPOL Annex I, such oily wastes may only be discharged into the ocean if they do not exceed fifteen (15) parts per million of oil in water and only after the oily wastes have been processed through required pollution prevention equipment, including oil filtering equipment.

4.      The Act to Prevent Pollution from Ships ("APPS") is how the United States implements and enforces MARPOL. All commercial vessels operating in the navigable waters of the United States, or in a port or terminal under the jurisdiction of the United States, must comply with regulations issued under APPS. APPS criminalizes any knowing violation of MARPOL, APPS itself, or the regulations that implement APPS. 33 U.S.C. § 1908(a).

5.      Consistent with the requirements contained in MARPOL Annex I, APPS regulations require that certain vessels maintain a record, called an Oil Record Book or "ORB," in which the person in charge of operations involving oily wastes must record (a) any disposal of oil residue, (b) the discharge overboard of bilge water, and (c) any other disposal of bilge water. 33 C.F.R. § 151.25(d). Discharges from a ship's engine room and machinery spaces must be fully and accurately recorded in the Oil Record Book without delay by the person in charge of

the operation involving the discharge. 33 C.F.R. § 151.25(d) and (h). Any emergency, accidental, or other exceptional discharges of oil or oily mixtures must also be recorded in the Oil Record Book, together with a statement of the circumstances of, and reasons for, the discharge. 33 C.F.R. § 151.25(g). The *Capitola* was in the category of vessels required to maintain an Oil Record Book. 33 C.F.R. §§ 151.09(a)(5) and 151.25(d).

6. The United States Coast Guard (U.S. Coast Guard) inspects and regulates vessels under APPS. The U.S. Coast Guard is an agency of the United States government. Beginning on or about May 3, 2010, the U.S. Coast Guard began an inspection of the *Capitola* in Baltimore, Maryland, which included a MARPOL inspection. The U.S. Coast Guard reviewed the *Capitola's* Oil Record Book.

7. One senior engineering officer made entries in the *Capitola's* Oil Record Book, never stating or indicating that there had been any discharge of untreated oily wastes between sometime before October 2009 and May 2010. Yet, between sometime before October 2009 and May 2010, that senior engineering officer had routinely ordered engine room crewmembers to discharge untreated waste directly into the ocean.

8. On a routine and regular basis (usually at least once each day), an engine room crewmember measured the *Capitola's* waste tanks (a process known as "sounding") and recorded the levels in those tanks in a document called the Daily Sounding Record. The Daily Sounding Record therefore contained a daily record of how much waste—including sludge and other oily mixtures—was in each waste tank. When the *Capitola* was at sea, an engine room crewmember regularly delivered the Daily Sounding Record to the same senior engineering officer who maintained the Oil Record Book. That senior engineering officer reviewed the Daily Sounding Record and sometimes issued orders to adjust the levels in the waste tanks to achieve particular targets. Some of the tank adjustments involved illegal overboard discharges.

3

## CHARGE

9.	Between on or about May 3, 2010, and on or about May 5, 2010, in the Port of Baltimore and within the District of Maryland, the Defendant,

**CARDIFF MARINE INC.,**

by and through the acts of its agents and employees, acting within the scope of their agency and employment and, at least in part, for the benefit of the defendant, did corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the U.S. Coast Guard. Specifically, while being interviewed by a U.S. Coast Guard boarding officer during an inspection, one of the Defendant's senior engineering officers denied that there was a sounding record other than undated scraps of paper, and told subordinate engine room crewmembers to tell the U.S. Coast Guard that the vessel had no daily sounding record, when he then knew that such a record was regularly used on the vessel.

18 U.S.C. § 1505  
18 U.S.C. § 1515(b)

## COUNT TWO

### (33 U.S.C. § 1908(a) – Act to Prevent Pollution from Ships)

1. The United States Attorney and the Assistant Attorney General hereby reallege and incorporate by reference herein paragraphs 1 through 8 of Count One and further charge that between on or about May 3, 2010, and on or about May 4, 2010, in the Port of Baltimore and within the District of Maryland, the Defendant,

### CARDIFF MARINE INC.,

by and through the acts of its agents and employees, acting within the scope of their agency and employment and, at least in part, for the benefit of the defendant, did knowingly fail to maintain and caused others to fail to maintain an Oil Record Book for the *Capitola* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures were fully recorded. Specifically, on or about May 3 and 4, 2010, a senior engineering officer failed to maintain an accurate Oil Record Book while in the Port of Baltimore, in that the Oil Record Book in which he made entries failed to disclose certain overboard discharges of oily waste that he had ordered during his tenure on the *Capitola*.

33 U.S.C. § 1908(a)
33 C.F.R. § 151.25

/s/ Rod Rosenstein
Rod J. Rosenstein
United States Attorney

Ignacia S. Moreno
Assistant Attorney General

5